IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON MOTION TO SUPPRESS |
| v. | |
| HUGO PAGE SANTOS, | Case No. 2:12-cr-606-RJS |
| Defendant. | Judge Robert J. Shelby |

Defendant Hugo Page Santos moves to suppress evidence seized by Drug Enforcement Agency Officers from the trunk of a Ford Focus during an attempted drug deal. (Dkt. 70.) For the reasons stated below the court DENIES the motion.

**I. Factual Background**

On September 23, 2012, a Confidential Informant advised Special Agent Ron Anson, a member of the Drug Enforcement Agency, that an individual going by the name of "Crook" or "Brandon," could deliver about eight pounds of methamphetamine to the Confidential Informant. The next day, on September 24, 2012, Agent Anson helped the Confidential Informant record telephone conversations between the Confidential Informant and Brandon regarding the purchase of methamphetamine. In these conversations, Brandon told the Confidential Informant that the

1

transaction would take place at the Hampton Inn in Lehi.  Brandon also indicated that the methamphetamine had come from California.

On the proposed delivery date, the DEA Task Force set up surveillance of the Hampton Inn area.  One of the Task Force members, Officer Christopher Williamson, observed two cars with California license plates, a silver Nissan Altima and a red Ford Focus, parked at the hotel.  Officer Williamson also observed two individuals, later identified as Mr. Santos and co-defendant Justin James Ocegueda, transferring something from the Nissan Altima to the Ford Focus.  Officer Williamson further observed Mr. Santos and Mr. Ocegueda drive the Ford Focus from the Hampton Inn to the parking lot of a nearby JCW Restaurant.  There, they emptied garbage from the car while Mr. Ocegueda used his phone.  During this time, the Confidential Informant arrived in the area, driving through a Maverick gas station lot and parking in a UTA Park and Ride lot near the JCW Restaurant.

Brandon called the Confidential Informant and told him to go to the JCW Restaurant parking lot.  The Confidential Informant responded that there were too many people there and suggested meeting at the UTA Park and Ride lot instead. Mr. Ocegueda, with Mr. Santos in the passenger seat, then drove the Ford Focus to the south side of the UTA Park and Ride lot.  The Confidential Informant told Brandon that he was on the north side of the lot.  Mr. Santos and Mr. Ocegueda drove the Ford Focus from the south to the north side of the lot.  Mr. Ocegueda got out of the car, contacted the Confidential Informant, and gave the Confidential Informant a phone with Brandon on the line.

Mr. Ocegueda then walked back to the Ford Focus, retrieved a large bag, similar to a "party bag," and returned to the Confidential Informant's car.  There, they cut into a package to

examine its contents and the Confidential Informant confirmed it was methamphetamine. At that point, Mr. Ocegueda and Mr. Santos were arrested and a search of the Ford Focus following the arrest revealed 5,000 grams of methamphetamine. The registered owner of the Ford Focus was later determined to be Geneva Bustamonte, a California resident.

## II. Standing

The United States argues that Mr. Santos does not have standing to contest the search because he lacks a sufficient privacy interest in the Ford Focus. Whether Mr. Santos's Fourth Amendment rights were violated by the search "turns on the classic Fourth Amendment test: 'whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as objectively reasonable.'" *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000) (citing *United States v. Erving L.*, 147 F.3d 1240, 1270 (10th Cir. 1998)). "In the context of automobile searches, we have held the following criteria 'important[ ] though not determinative': '(1) whether the defendant asserted ownership over the items seized from the vehicle; (2) whether the defendant testified to his expectation of privacy at the suppression hearing; and (3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle.'" *United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009) (quoting *Allen*, 235 F.3d at 489). Moreover, "the proponent of the motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *Allen*, 235 F.3d at 489.

Here, testimony at the suppression hearing revealed that neither Mr. Santos nor Mr. Ocegueda held title to the Ford Focus. Mr. Santos even testified that he knew that Mr. Ocegueda

3

was not the owner of the Ford Focus. Instead, title was held by Ms. Geneva Bustamonte. And there is no evidence that Ms. Bustamonte conveyed a possessory interest in the Ford Focus to either Mr. Santos or Mr. Ocegueda. In fact, there is no evidence clarifying the relationship, if any, between Mr. Ocegueda, Mr. Santos, and Ms. Bustamonte.

Mr. Santos nevertheless testified that Mr. Ocegueda authorized him to possess the Ford Focus. Mr. Ocegueda gave the keys to Mr. Santos after they arrived at the Hampton Inn and instructed Mr. Santos to drive the car to a gas station to fill the tank. In addition, Santos testified that he had a possessory interest in the Ford Focus because he knew there was something illegal in the trunk, and his family would be harmed if he did not keep the car and its contents secure.

These statements, however, are not enough to establish standing. "[T]he proponent of a motion to suppress need not always come forward with legal documentation establishing that he lawfully possessed the area searched" but "the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession." *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990). Mr. Santos did not know the owner of the Ford Focus. Moreover, he knew that Mr. Ocegueda was not the owner. And "there was no evidence concerning where or from whom [Mr. Ocegueda] obtained the vehicle or whether his apparent possession was lawful." *United States v. Erwin*, 875 F.2d 268, 271 (10th Cir. 1989).

Thus, there is no evidence to suggest that Mr. Santos gained possession from the owner or someone with the authority to grant possession. The fact that Mr. Ocegueda transferred possession of the car to Mr. Santos after they arrived in Utah, urging him to drive across the street and fill the vehicle's gas tank, is insufficient to establish a possessory interest in the car or a reasonable expectation of privacy. *Id.* Nor can Mr. Santos's possession of the car keys create a

4

possessory interest. "In the absence of other evidence, possession of a key does not establish a passenger's legitimate expectation of privacy in a vehicle." *Id.* Similarly, Mr. Santos's non-specific knowledge of contraband alone is insufficient. *Id.* at 270-71 (finding defendant's similar claim regarding the presence of marijuana deficient and noting that the Supreme Court has rejected claims of "automatic standing," "declin[ing] to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area search[ed]") (citing *United States v. Salvucci*, 448 U.S. 83, 92 (1980)).

Therefore, Mr. Santos has not met his burden to establish standing to challenge the search of the Ford Focus and the subsequent seizure of the methamphetamine. As a result, his motion is denied.

### III. Probable Cause

Even if Mr. Santos had standing to assert a Fourth Amendment violation, there was probable cause for his arrest and the subsequent search of the Ford Focus. "Police may search a vehicle incident to a recent occupant's arrest only if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Grant*, 556 U.S. 332, 351 (2009). Here, the conversation between the Confidential Informant and Mr. Ocegueda confirmed that methamphetamine was packed in the party bag. In addition, the officers knew the package Mr. Ocegueda brought back to the Ford Focus contained drugs. These circumstances provided the officers ample reason to believe that the car contained additional contraband.

Notwithstanding these facts, Mr. Santos argues that the officers had no probable cause to search the car because it was unconstitutional for them to record the conversation between the Confidential Informant and Mr. Ocegueda relating to the content of the party bag. Mr. Santos

5

contends that the Confidential Informant did not consent to have this specific conversation recorded because the Confidential Informant gave consent only to have conversations with Brandon taped, not conversations with Mr. Ocegueda. *See Osborn v. United States*, 385 U.S. 323, 329 (1966) (holding that the use of a listening device requires "precise and discriminate circumstances, circumstances which fully [meet] the requirement of particularity."). At oral argument, Mr. Santos argued that consent was therefore absent when Brandon did not show up for the drug exchange.

But Mr. Santos's argument urging this level of specificity for consent finds no support in the case law. In addition, Mr. Santos's proposed rule would render consent impossibly problematic to obtain in drug deals, which are typically dynamic and subject to unanticipated changing circumstances. Savvy drug dealers would be able to suppress any wiretapped conversation simply by switching the identity of the party appearing at a drug buy at the last minute. The court declines Mr. Santos's invitation to fashion such a narrow definition of consent.

Moreover, the Confidential Informant's consent was clear in this case under the Federal Wiretap Act, 18 U.S.C. § 2511(2)(c), which states: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." *See also United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1569 (10th Cir. 1993) ("Where a party to a conversation consents to the interception of that conversation, such interception is lawful.").

Here, the Confidential Informant clearly gave prior consent to the taping of the drug transaction: he was outfitted with a wire, knew the officers would be listening, and carried out the conversation and drug buy. Agent Anson further testified that the Confidential Informant agreed to have his conversations wiretapped in advance. The fact that Mr. Ocegueda's identity was unknown to the Confidential Informant when he consented to have his conversations recorded does not render his consent invalid. The Tenth Circuit has held that consent may be implied in circumstances that are far more general than those present here. *See United States v. Faulkner*, 439 F.3d 1221, 1223-25 (holding that consent was properly implied where prison posted signs notifying inmates their phone conversations could be tapped).

Accordingly, the court finds that the police officers lawfully obtained the Confidential Informant's consent and permissibly used the information derived from the conversations between Mr. Ocegueda and the Confidential Informant to establish probable cause for Mr. Santos's arrest and the search of the Ford Focus.

## IV. Evidentiary and Reliability Issues

Mr. Santos also challenges the testimony of Agent Anson and the reliability of the Confidential Informant. Specifically, Mr. Santos argues that Agent Anson was not properly qualified as an expert to testify on drug-related matters. Mr. Santos further contends that the hearing should be reopened because the taped conversation rather than Agent Anson's narration constitute the best evidence under Federal Rule of Evidence 1002. Also, Santos argues that the reliability of the Confidential Informant was not established, citing the "totality of the circumstances" test from *Illinois v. Gates*, 462 U.S. 213 (1983).

But in the Tenth Circuit, "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Conner*, 699 F.3d 1225, 1227 (10th Cir. 2012) (citing *United States v. Matlock*, 415 U.S. 164, 172-73 (1974)). Under these relaxed rules, the court declines to reopen the evidentiary hearing for expert issues or for examination of the taped conversation. These matters are more appropriately addressed with motions *in limine* or during trial. In addition, Mr. Santos did not press his argument regarding the reliability of the informant at oral argument and presents no compelling evidence of the informant's unreliability under the circumstances here. Moreover, Agent Anson independently corroborated the reliability of the Confidential Informant. *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."). This independent corroboration is sufficient at this stage of the proceedings.

## V. Conclusion

For the foregoing reasons Mr. Santos' Motion to Suppress (Dkt. 70) is DENIED.

SO ORDERED this 3th day of October, 2013.

BY THE COURT

_____
ROBERT J. SHELBY
United States District Judge